IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| GLEN ALLEN BETHANY JR. | § | |
| v. | § | CIVIL ACTION NO. 2:06cv174 |
| DIRECTOR, TDCJ-CID | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Petitioner Glen Bethany, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of his conviction. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Bethany was convicted of capital murder, receiving a sentence of life in prison. After exhausting his state remedies, he filed this application for federal habeas corpus relief, asserting that he received ineffective assistance of counsel, the trial court made an error in the charge, and the prosecutor wrongfully suppressed exculpatory evidence. He stated that his attorney failed to subpoena an individual named Mark Fish, failed to investigate the fact that during the trial, Bethany was under the influence of drugs, failed to ask the trial court for DNA testing of a warm-up jacket, and failed to object to the jury charge.

The Magistrate Judge ordered the Respondent to answer Bethany's petition and reviewed the state court records. On March 16, 2007, the Magistrate Judge issued a Report recommending that the petition be dismissed. Bethany filed objections to the Report on April 2, 2007.

In his objections, Bethany first accuses the Magistrate Judge of not reviewing the record, based on the fact that the Magistrate Judge said that there was no indication that his first trial had ended in a mis-trial, when the record made clear that it did. The Report makes clear that the Magistrate Judge reviewed the record. This assertion is without merit.

Next, Bethany challenges the Magistrate Judge's specific conclusions on his claims of ineffective assistance of counsel. He says that the trial judge ordered the police to detain all of the state's witnesses who failed to appear, except for Fish, and asks that if Fish was such a great state's witness, why was he allowed to fail to appear. However, Bethany offers nothing to show that Fish would have testified in his favor, even identifying Fish as a "state's witness."

In habeas claims involving counsel's failure to call witnesses, the Fifth Circuit has held that to prevail, the petitioner must show that the witness' testimony would have been favorable and that the witness would have testified at trial. Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985). Petitions raising this claim are required to show prejudice arising from the failure to call the witnesses, and the Fifth Circuit noted that such claims are not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and speculations as to what these witnesses would have testified is too uncertain. Alexander, 775 F.2d at 602; see Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978) and United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983), *cert. denied* 467 U.S. 1251 (1984). Bethany has not shown that Fish's testimony would have been favorable, and so his claim on this point is without merit.

Second, Bethany says that counsel failed to investigate the fact that he was on "mind-altering medication," specifically Xanax and Elavil. Although he says that these medications made him "overbearing, excessively talkative, irritable, and prone to drowsiness" during trial, he fails to show that he was incompetent to stand trial in that he lacked sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, or that he had a rational as well as factual understanding of the proceedings against him. *See* Theriot v. Whitley, 18 F.3d 311, 312 (5th Cir. 1994).

In addition, as the Respondent points out, Bethany claims to have been coherent, cooperative, and alert at his first trial, but "unresponsive" at his second trial; however, he says that in August of 2001, even before his first trial, a nurse recommended that he begin taking Xanax and Elavil.

Furthermore, the Respondent notes that Bethany's testimony at trial shows no signs of incoherence, but is "lucid and talkative." The fact that Bethany was suffering from anxiety is hardly unexpected in a person on trial for capital murder. Bethany has failed to show that he received ineffective assistance of counsel in this regard and so his objections are without merit.

Third, Bethany objects to the Magistrate Judge's conclusions concerning his attorney's failure to seek DNA testing of a warm-up jacket. He says that this testing would have shown that the jacket did not belong at him, but to a person named Jeff Lynch, whom Bethany had postulated was the guilty party. The Magistrate Judge concluded that even if it were proven that the jacket, which was found in the burned truck used in the murder, had someone else's DNA on it, this would not have been exculpatory, because other evidence pointed to Bethany's guilt; the victim's DNA was found on several items in a truck which Bethany admitted stealing and burning, Bethany's tennis shoes, with the victim's blood on them, were found in that truck; the footprints of those shoes matches the footprints in the area where the victim was killed; and the victim's blood was on Bethany's wristwatch and T-shirt, which were in the console of the stolen truck.

In addition, the Magistrate Judge said that Bethany's counsel questioned law enforcement officers about the jacket, including the failure to test it for DNA, and raised the issue in his closing statement. The law enforcement officer stated that the jacket had been sent off for DNA testing and did not know why this was not done. Bethany simply argues that had the jacket been shown to belong to Lynch, this would have "proved that he was telling the truth" concerning the presence of Lynch on the night of the murder. This assertion fails to show that he received ineffective assistance of counsel in this regard; inasmuch as the jacket was sent off for testing, he does not even indicate what further measures counsel could have taken. Nor has Bethany shown that

but for counsel's alleged error, the result of the proceeding would probably have been different. His objections on this point are without merit.

Fourth, Bethany complains that counsel failed to err when the jury was charged on murder for remuneration, when there was no evidence to support such a charge. The court records show that the indictment charged Bethany with capital murder in two paragraphs, one of which alleged that Bethany caused the death of Charles Wiggins for remuneration and the promise of remuneration, and one of which charged him with capital murder in the course of committing robbery. The charge to the jury read, in pertinent part, as follows:

> if you either believe from the evidence beyond a reasonable doubt, that on or about March 17, 2001 ... the defendant, Glen Allen Bethany, Jr. did then and there intentionally and knowingly cause the death of ... Charles Randall Wiggins, by hitting [him] in the head with a hammer and stabbing [Wiggins] in the throat with a knife, ... for remuneration and [sic] the promise of remuneration from Tammy Wiggins,... or if you believe from the evidence beyond a reasonable doubt, that on or about the17th day of March, 2001 ... [Bethany], in the course of attempting to commit and committing robbery ... did then and there intentionally and knowingly commit murder by causing the death of ... [Wiggins] by hitting [Wiggins] in the head with a hammer and stabbing [Wiggins] in the neck with a knife ... you will find the defendant, Glen Allen Bethany, Jr., guilty of capital murder as charged in the indictment.

The Court of Appeals concluded that there was no error in charging Bethany in the disjunctive, because it is appropriate, where alternative theories of committing the same offense are submitted to the jury in the disjunctive, for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted. Bethany v. State, 152 S.W.3d 660, 667 (Tex.App.-Texarkana 2004, pet. ref'd), *citing* Kitchens v. State, 823 S.W.2d 256, 258 (Tex.Crim.App. 1991). Because there was no error in the charge, Bethany has not shown that counsel rendered ineffective assistance by failing to object to it. *See* McCoy v. Lynaugh, 874 F.2d 954, 963 (5th Cir. 1989) (counsel has no obligation to make meritless objections). Bethany's objection on this point is without merit.

Bethany goes on to complain of the alleged error in the charge when the trial county instructed the jury on murder for remuneration. As noted above, there was no error. This contention is without merit.

Third, Bethany complains of "prosecutorial misconduct: in the failure to test certain items of evidence, including the warm-up jacket and some beer bottles, for DNA. He says that had the items been tested and shown to have the DNA of other persons on them, this could have shown that another person was present in the truck on the night of the murder. He says that he argued at trial that Jeffrey Lynch, the brother-in-law of the victim, was in possession of the truck on that night, and claims that the prosecution "ordered" that the warm-up jacket not be tested, although he fails to state what evidence he has of this accusation.

However, even assuming that DNA of other persons could have been found on these items, but was suppressed by the State, Bethany has still failed to show a constitutional violation. In order to prevail on such a claim, he must show that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Banks v. Dretke, 540 U.S. 668, 698 (2004). Bethany has simply failed to show that the failure to test the warm-up jacket and the beer cans, even assuming that such testing would have divulged the evidence which he claims, amounts to a constitutional violation justifying habeas corpus relief, nor that such evidence, if discovered, would have put the whole case in such a different light as to undermine confidence in the verdict. Bethany's objection on this point is without merit.

The Court has conducted a careful *de novo* review of the pleadings in this cause, including the original petition and memorandum of law in support, the answer filed by the Respondent, the response to the answer, the Report of the Magistrate Judge, the Petitioner's objections thereto, and all other pleadings, documents, and records in the case. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the objections of the Petitioner are without merit. It is accordingly

ORDERED that the Petitioner's objections are overruled and that the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled application for the writ of habeas corpus be and hereby is DISMISSED with prejudice. It is further

ORDERED that the Petitioner Glen Bethany is hereby DENIED a certificate of appealability *sua sponte*. Finally, it is

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

SIGNED this 15th day of January, 2008.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE